ARENBURG v. GRUPE et al.

(District Court, E. D. New York. December 28, 1904.)

SHIPPING—CHARTER PARTY—MEASUREMENT OF TIMBER.

 A provision in a charter party for the carriage of a cargo of timber from a Cuban port to New York, fixing the freight per thousand feet, "Cuban invoice," means the same as "Cuban invoice measure"—the term having a known meaning in the trade, as relating to a peculiar system of measurement; and the vessel owners are bound by such provision, although the agents who negotiated the charter had no actual knowledge of such meaning.

In Admiralty. Suit for charter hire.

MacFarland, Taylor & Costello (W. W. MacFarland, of counsel), for libelants.

Benedict & Benedict (E. G. Benedict, of counsel), for respondents.

THOMAS, District Judge. This action involves the interpretation of the charter party of the schooner Maple Leaf, employed to bring a cargo of cedar and mahogany from Cochines Bay, Cuba, to New York. The charter was negotiated by Walford & Co., representing the owners, with the respondents, and before the charter was signed it was agreed that the compensation should be, on square sticks $10 per thousand superficial feet, and on round sticks $13 per thousand feet. After the charter party had been made out, but before execution, one of the respondents stated to the agents that he wanted the words "Cuban invoice" inserted, and to this the agents agreed. Thereupon the charter party was executed, and makes provision for the payment for the service of the vessel, "On square sticks ten ($10) dollars per thousand superficial feet, Cuban invoice, on round sticks thirteen ($13) dollars per thousand feet, Cuban invoice." The bill of lading was signed by the master after loading and refers to Cuban invoice measurement, although the master demurred to it at the time on the ground that it did not correctly state the amount of the cargo. The timber measures about 30 per cent. less, employing what is known as the "Cuban invoice measurement," than if measured according to the system employed by Constantine, who measured the timber for the libelants. The libelants show that their agents, Walford & Co., had no knowledge of the nature of Cuban invoice measure, and that, so far as such agents knew, no such term, having a peculiar significance, was recognized at the port of New York. The evidence shows, however, that on the 6th day of October, two days before the charter purports to be executed, a ship consigned to Walford & Co. arrived at this port, and that her cargo came in "Cuban invoice measure," or "Cuban invoice freight measure." There is no question but there is a distinct system of measuring, known as "Cuban invoice measurement," and that freight according to such system has been fully paid by respondents. The evidence discloses that the expressions "Cuban invoice" and "Cuban invoice measurement," used in the connection in which the words "Cuban invoice" are employed in the charter party, mean the same thing. The witness Ferrer, called by the libelants, understood the meaning of the term "Cuban invoice measure," and stated how measuring was done under that system, and his description accords with the respondents' claim in such regard. The same witness gave this evidence:

"Q. 'Cuban invoice'— Would those words, without the words 'Cuban invoice measure,' indicate anything to you, as a merchant? A. 'Cuban invoice' might. I would understand 'Cuban invoice' to mean invoice of any merchandise. But 'Cuban invoice measure,' relating to timber, would mean the same thing. Q. What would the expression '$10 per thousand superficial feet Cuban invoice' mean? A. That would mean timber. I mean a measure of timber— a price on the timber for the freight."

Other evidence in the case shows that "Cuban invoice measure" is a term understood in the trade, and has a known meaning; and

the parties are deemed to have made the contract with the intention of using the words in the sense in which they would be accepted by persons engaged in the trade, which was the subject-matter of the charter party. It is urged by the libelants that a great injustice comes to the libelants if such system of measurement obtain in the present case. Such conclusion is by no means established, but, even so, the contract deliberately made by the parties cannot now be refashioned for the purpose of more justly adapting the compensation to the service.

The libelants are entitled to recover charter hire according to Cuban invoice measurement, as employed by Black, who measured the timber for the respondent. If there is any question as to the accuracy of his results, it can be determined by a commissioner.